IN THE UNITED STATES DISTRICT COURT
FOR THE NORTH DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| CHERYL FRANKS and TYRA FRANKLIN | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. |
| PARK TOWERS I, CONDOMINIUM ASSOCIATION, INC. | ) ) ) | |
| FIRSTSERVICE RESIDENTIAL GEORGIA, INC. | ) ) ) | |
| JONI COOK | ) ) | JURY TRIAL DEMANDED |
| Defendants. | ) ) | |

## COMPLAINT

Plaintiffs, Ms. Cheryl Franks and Ms. Tyra Franklin, (hereinafter the "Plaintiffs" or "Homeowners") file this complaint against Defendants seeking redress for violations of the Fair Housing Act, 42 U.S.C. § 3601 and 42 U.S.C. § 1981.

## INTRODUCTION

Ms. Cheryl Franks and Ms. Tyra Franklin, mother and daughter, (hereinafter the "Plaintiffs" or "homeowners") moved into the Park Towers I in 2011. On February 12, 2022, the homeowners waited in the Park Towers lobby for their car service to arrive for approximately ten minutes. Upon its arrival, Plaintiffs left the premises without incident. Unbeknownst to them, HOA President Joni Cook, also present in the lobby on the morning of February 12, would issue a no-entry order against them because of their blackness—without saying anything to them and without providing any notice to them.

Ms. Franks and Ms. Franklin were unpleasantly surprised, upon their return to the community lobby on the afternoon of February 12, 2022, when a white male agent of the HOA prohibited their entry—saying, "I can't let you in" – the HOA President said you were loitering, and you are not allowed to come back in the home. As a crowd gathered on that Saturday afternoon, Ms. Franks frantically waived her key fob in an effort to prove their residency. Still, the scene continued for over 15 minutes, while onlookers viewed the humiliation and embarrassment. Both Ms. Franks and Ms. Franklin feared that law enforcement was in route to escort them from the property that they were lawfully entitled to enter. Because of the discriminatory treatment, Ms. Franks suffered a panic attack, caused by increased blood pressure. Ms. Franklin was similarly triggered by the incident of

discrimination—which induced stress and anxiety.  Defendants have interfered

with the Plaintiffs' federal rights to hold property without unlawful racial

discrimination—resulting in stress, pain and suffering, and interference with their

property use rights.  Ms. Franks and Ms. Franklin seek pecuniary, equitable, and

compensatory damages to make them whole.

## **PARTIES**

1.

Ms. Cheryl Franks is an adult African American female.  At all times relevant to

this action, Ms. Franks has been and continues to be a resident of Fulton County.

Ms. Franks submits to the jurisdiction of this Court.

2.

Ms. Tyra Franklin is an adult African American female.  At all times relevant to

this action, Ms. Franks has been and continues to be a resident of Fulton County.

Ms. Franklin submits to the jurisdiction of this Court.

3.

Park Towers I Condominium Association, Inc. (hereinafter "Association" or

"Defendant Association") is a domestic non-profit corporation.  The Association's

principal place of business is located at 795 Hammond Dr, Sandy Springs,

Georgia, 30328, and its Registered Agent, Lueder Larkin Hunter LLC physical

address is 5900 Windward Parkway, Suite 390, Alpharetta, Georgia, 30005 in

Fulton County.  The Association is responsible for managing, enforcing, creating,

and maintaining the covenants, codes, and restrictions that run within the

community.

4.

FirstService Residential Georgia Inc. (hereinafter "FirstService") is a domestic

profit corporation.  The corporation's principal place of business is located at 3400

Peachtree Rd N.E. Suite 1700, Atlanta, Georgia, 30326, and its Registered Agent,

Corporation Service Company's physical address is 2 Sun Court, Suite 400,

Peachtree Corners, Georgia in Gwinnett County.  FirstService is the property

management company and agent of the Defendant Association—responsible for

managing, enforcing, and maintaining the covenants, codes, and restrictions that

run within the community.

5.

Ms. Joni Cook is a white adult female.  Ms. Cook is the current HOA President of

the Park Towers I Condominium Association.  As the HOA President, Ms. Cook is

empowered to make decisions related to the creation, management, and

enforcement of the CC&Rs for the Park Towers I Condominium.   At all times

relevant to this action, President Cook wielded her authority as President to

intentionally discriminate against Ms. Franks and Ms. Franklin.  At all times

relevant to this Action, President Cook was acting in her official capacity as

President of the Association.

## **JURISDICTION AND VENUE**

### 6.

This action arises under laws of the United States, including Plaintiffs'

claims against Defendants for violations of the Fair Housing Act, a federal civil

rights statute. This Court has authority to award costs and attorneys' fees under 42

U.S.C. § 1988 and 42 U.S.C. § 3613.

### 7.

Venue is proper in the Northern District of Georgia pursuant to 28 U.S.C. §

1391(b)(1) and (b)(2).  Plaintiffs have residence in the Northern District of

Georgia, and a substantial part of the events and omissions giving rise to the claims

in this action occurred in this district.

## **FACTS**

### 8.

Ms. Franks and her daughter, Ms. Franklin are both African American women.

### 9.

Ms. Franks and her daughter, Ms. Franklin have lived in the Park Towers community since 2011, for approximately 11 years.

10.

Park Towers is a three-building community which includes: Park Towers I (270 condos + 2 commercial condos), Park Towers II (300 apartments), and Park Towers Place (88 condos).

11.

All homeowners and tenants of the Park Towers community have access to various common areas via a reciprocal easement agreement.

12.

The reciprocal easement agreement grants Plaintiffs' access to the main lobby and common areas, concierge, valet, and other services.

13.

Pursuant to the Park Towers Resident Handbook, loitering in the lobby is prohibited.

14.

Park Towers is a controlled access community and only owners and residents are granted access to building amenities.

15.

Park Towers requires owners and residents to keep have their key fob to enter the premises, but the main lobby front doors remain unlocked between 7 a.m. and 11 p.m.

16.

Park Towers residents, owners, and guests can enter the front lobby without presenting their key fob between 7 a.m. and 11 p.m.

17.

If a Park Tower resident is missing their key fob, outside of the open access hours, the owner must sign in at the concierge and present their ID to gain entry into the community.

18.

The Park Tower Association acquired the services of FirstService Residential (hereinafter "FirstService"), a property management company.

19.

According to FirstService's website, "HOAs…rely on their extensive experience, resources, and local expertise to maximize property values and enhance their residents' lifestyles. Dedicated to making a difference, every day, FirstService Residential goes above and beyond to deliver exceptional service."

20.

At all times relevant to this Action, FirstService was acting in its agency capacity on behalf of the Defendant Association.

21.

Among other duties, FirstService provides personnel to staff the main lobby of Park Tower.  They are tasked with assisting with enforcing the controlled access policies of the Defendant Association.

22.

Ms. Franks and Ms. Franklin reside at The Eva which is adjoined to Park Tower I.

23.

Ms. Franks is a Real Estate Broker and Licensed Agent with the Georgia Real Estate Commission.

24.

As a Real Estate Agent, Ms. Franks has rented and sold properties on the premises of Part Tower I.

25.

As a homeowner, Ms. Franks have personally worked with Community Committees through the HOA.

26.

On the morning of February 12, 2022, Ms. Franks and Ms. Franklin left from their home to wait in the lobby common use area for their vehicle concierge to arrive.

27.

While waiting in the lobby, Plaintiffs noticed that a neighbor Jimmy Jordan was speaking with an unknown white woman.

28.

Ms. Franks and Ms. Franklin later discovered that the unidentified white woman was HOA President Cook.

29.

HOA President Cook was present at the glass table in the common use area while Ms. Franks and Ms. Franklin waited for approximately 10 minutes for their private service to arrive from the Mercedes Benz Dealership.

30.

Ms. Franks has never personally met HOA President Cook.

31.

Ms. Franklin has never personally met HOA President Cook

32.

On the afternoon of February 12, 2022, Ms. Franks and Ms. Franklin returned to the Park Towers lobby to return home. But they were approached by Jenner Wilt, a 6-foot white male guard who ran in their direction, stood before the doubled doorway, and prevented Plaintiffs from entering with his shoulders and body.

33.

The guard stood inches in front of Ms. Franks and said, "I can't let you in" – the HOA President said you were loitering, and you are not allowed to come back in the home.

34.

Mr. Wilt is an employee of FirstService.  At all times relevant to this Action, Mr. Wilt was acting in his capacity as a FirstService property manager.

35.

It was a Saturday afternoon, and a line began forming.

36.

As the crowd gathered, Ms. Franks and Ms. Franklin were embarrassed at the scene being created.

37.

In an effort to prove their home ownership, Ms. Franks began to frantically waive around her key fob to Mr. Wilt.

38.

Mr. Wilt continued to refuse entry to Ms. Franks and Ms. Franklin, saying that he had to follow the HOA President's directive.

39.

Ms. Franklin became more anxious as the crowd increased.

40.

Ms. Franks and Ms. Franklin were made to wait and denied access to their home for at least 15 minutes while their residency was confirmed by Mr. Wilt.

41.

Mr. Wilt denied Ms. Franks and Ms. Franklin access to their home because HOA President Joni Cook instructed him to do so.

42.

Because of HOA President Cook, Ms. Franks and Ms. Franklin were humiliated publicly while they tried to lawfully enter their home.

43.

Eventually Mr. Wilt granted Ms. Franks and Ms. Franklin access into the Park Towers community.

44.

Mr. Wilt apologized to Ms. Franks and Ms. Franklin, saying 'he wanted to cry because of the traumatizing experience' that he had contributed to.

45.

Ms. Franks, who is 64, had to sit and rest following the discriminatory encounter.

46.

Ms. Franks blood pressure was elevated, and she was visibly distraught.

47.

Ms. Franks has a secured key fob that allows her guaranteed access to her private residence.

48.

Ms. Franklin has a secured key fob that allows her guaranteed access to her private residence.

49.

In the 11 years that Ms. Franks and Ms. Franklin have lived in the community, they have never had any violations.

50.

Prior to the February 12 incident, Ms. Franks and Ms. Franklin had never been denied access to their home.

51.

Upon information and belief, HOA President Cook assumed without confirming that Ms. Franks and Ms. Franklin were not residents within the Park Towers community because they are black women.

52.

HOA President Cook gave Mr. Wilt the directive to prohibit Plaintiffs' entry because of racial animus toward black people.

53.

HOA President Cook did not ask Ms. Franks and Ms. Franklin whether they were residents in the Park Towers community.

54.

HOA President Cook did not request that Ms. Franks and Ms. Franklin relocate from the main lobby.

55.

HOA President Cook usurped her authority as HOA President when she discriminatorily ordered FirstService to prohibit Ms. Franks' and Ms. Franklin's reentry into their home.

56.

HOA President Cook intentionally deprived Plaintiffs of their right to reenter their home via the main lobby of the Park Towers community because of their identification as black women.

57.

FirstService participated in the discriminatory treatment of Ms. Franks and Ms. Franklin by failing to (1) verify that Plaintiffs were residents prior to enforcement of the no-entry order (2) allow Plaintiffs access to the Park Towers community immediately upon Ms. Franks showing the key fob (3) discriminatorily applying the anti-loitering provision against black persons.

58.

As recently as January 2022, Ms. Franks and Ms. Franklin have witnessed white people loitering in the lobby with open containers of alcohol.

59.

Ms. Franks and Ms. Franklin have never witnessed white residents and tenants be denied access to the lobby, despite repeated violations of the anti-loitering provision.

60.

Ms. Franks and Ms. Franklin have never witnessed white residents and tenants be denied access to the Park Towers community without cause.

61.

Upon information and belief, the HOA does not chastise, discipline, or deny access to the lobby for white residents and owners who "loiter" in the lobby.

62.

Four letters of complaint have been sent to the Defendant Association on behalf of Ms. Franks and Ms. Franklin, but Defendants have yet to address the allegations of discrimination.

63.

After his apology to the homeowners, Mr. Wilt informed Ms. Franks and Ms. Franklin that HOA President Cook wrote an incident report against them alleging that they (1) did not have a key fob and (2) that they were "frivolously loitering" on the premises.

64.

As a sanction for the purported violations, President Cook ordered Mr. Wilt to deny Ms. Franks and Ms. Franklin access to the Park Towers community.

65.

The purported violations alleged by Defendants are intended to hide racial animus as evidenced by (1) Plaintiffs' possession of key fobs and (2) Defendants non-enforcement of the loitering provision against white people.

66.

Since the incident, Ms. Franks' is experiencing trauma, anxiety, and stress related to the discriminatory encounter.  The February 12 incident has served as a triggering event for Ms. Franks' preexisting health conditions, including post-traumatic stress disorder.

67.

Following the incident, Ms. Franklin has encountered nearly daily panic attacks and anxiety, especially when she has to exit and re-enter the Park Towers community.

## COUNT I: FAIR HOUSING ACT VIOLATION BASED ON RACE
*(Plaintiffs Against Park Towers I Condominium Association, Inc., FirstService, And Joni Cook)*

68.

Plaintiffs reinstate and reincorporate P1—P67 stated above.

69.

Plaintiffs are within the protected classification of race covered under the Fair

Housing Act, as black women.

70.

Plaintiffs were intentionally and with malice aforethought denied the opportunity

to participate in the terms, conditions, and privileges granted to Homeowners of

the Park Towers community because of their race when Defendants denied them

entry into their home.

71.

Plaintiffs were intentionally and with malice aforethought denied the provision of

services—enjoyment of the main lobby on a non-discriminatory basis—in

connection with homeownership in the Park Towers community because of their

race.

72.

Defendant Association, by and through its agent President Cook, intentionally

interfered with the Plaintiffs right to enjoy the lobby via the reciprocal easement

agreement.

73.

Defendant Association, by and through its agent President Cook, intentionally interfered with the Plaintiffs right to access their home by instituting a no-entry order and asking its agent FirstService to enforce it because they are black.

74.

Defendant FirstService, by and through its agent Mr. Wilt, intentionally interfered with the Plaintiffs federally protected anti-discrimination housing rights by failing to (1) verify that Plaintiffs were residents prior to enforcement of the no-entry order (2) failing to allow Plaintiffs' access to the Park Towers community immediately upon Ms. Franks showing the key fob, and (3) discriminatorily applying the anti-loitering provision against black persons.

75.

President Cook's motivations for denying Plaintiffs' entry into the lobby and their home are rooted in racial animus and racial hierarchies, presuming that black people waiting in the lobby are "loitering" and white people waiting in the lobby are not loitering.

76.

President Cook's purported reasons for denying Plaintiffs' entry into the lobby and their home are rooted in racial animus and racial hierarchies because (1) Plaintiffs

were residents with key fobs on their person and (2) Plaintiffs did not loiter in the

Park Towers community on February 12, 2022.  Thus, President Cook had no

legitimate non-discriminatory reason to issue the order.

77.

After having notice of the discriminatory treatment, the Defendant Association

refused to intervene and stop the discriminatory behaviors of their president.

78.

Defendants have not denied white homeowners within the Park Towers community

the ability to enter the lobby and/or their homes without lawful basis.

79.

Defendants' discriminatory actions are a violation of the Fair Housing Act, 42

U.S.C. § 3604(b).

80.

As a result of the unlawful actions of Defendants, Plaintiffs have suffered loss of

income, emotional pain, suffering, mental anguish, attorney's fees, and other non-

pecuniary losses.

## COUNT II: SECTION 1981 RACIAL DISCRIMINATION IN THE PERFORMANCE OF CONTRACT

*(Plaintiffs Against Park Towers I Condominium Association, Inc ., FirstService,
And Joni Cook)*

81.

Plaintiffs reinstate and reincorporate P1—P67 stated above.

82.

Plaintiffs purchased their home within the Park Towers community in May 2016.

83.

As homeowners within the Park Towers community, Ms. Franks and Ms. Franklin
have the right to enjoy "all benefits, privileges, terms, and conditions of the
contractual relationship" including the right to egress and ingress from their
property on a non-discriminatory basis.

84.

Defendant Association, by and through President Cook, had knowledge and notice
of President Cook's discriminatory motive and actions and intentionally failed to
intervene to prevent ongoing discriminatory impact.

85.

Defendant FirstService, by and through Mr. Wilt, intentionally denied Plaintiffs
conditions and privileges they were entitled to when it denied Ms. Franks and Ms.
Franklin entry into the Park Towers community for discriminatory reasons; failed

to investigate the allegations against the Plaintiffs and failed to allow Plaintiffs
entry into the community after proof of residency was provided via key fob.

86.

Defendant Cook purposefully, unlawfully, and with malice, discriminated against
the Plaintiffs in the performance of contractual rights by denying them the
opportunity to use the lobby and enter their home because of their blackness.

87.

Defendants denied Ms. Franks and Ms. Franklin the same right to make and
enforce employment contracts, and to the full and equal benefit of all laws and
proceedings for the security of persons and property as is enjoyed by white
citizens, as described above and to be further proved at trial, because of their race,
in violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981.

88.

As a result of the unlawful actions of Defendants, Plaintiffs have suffered loss of
income, emotional pain, suffering, mental anguish, attorney's fees, and other non-
pecuniary losses.

89.

Based on all the facts incorporated to support this Count, Plaintiffs have
demonstrated that Defendants violated Ms. Franks' and Ms. Franklin's Section

1981 rights by denying them access to the lobby and their home for discriminatory reasons.

## COUNT III: ATTORNEY'S FEES

*(Plaintiffs Against Park Towers I Condominium Association, Inc., FirstService, And Joni Cook)*

90.

Based on the facts alleged in this Complaint, Plaintiffs are entitled to attorney's fees against Defendant under 42 U.S.C. § 1988(b), 42 U.S.C. § 3613, and all applicable laws.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs prays this Court:

a) That process issue and service be had on each Defendant;

b) That a jury trial be had on all issues so triable;

c) That Plaintiffs be awarded all costs and other expenses in an amount to be determined at trial, including attorney's fees;

d) That Plaintiffs have judgment against Defendants for punitive damages;

e) That this Court grant compensatory and equitable relief to Plaintiffs;

   1) Plaintiffs request that this Court enjoin Defendants from denying Plaintiffs' access to their home for discriminatory reasons;

f) That Plaintiffs receives such other and further relief as this Court deems just and proper.

DATE: April 14, 2022

Respectfully submitted,

<u>/s/ Angelik Edmonds</u>
Angelik Edmonds
Attorney for Plaintiffs
GA Bar: 650757
Edmonds Law Office of Civil Rights LLC
691 John Wesley Dobbs Avenue NE
Suite V-17 Atlanta, Georgia 30312
O: 678-404-1239
F: +1 678-623-9090
E: angie@aedmondslaw.com